[*General Term, April,* 1873.]

## CORNELIA S. BROOKE v. A. D. MORRIS ET AL.

B., in an action to foreclose a mortgage, obtained judgment on the note secured by mortgage for its full amount, and an order for the sale of the mortgaged premises to satisfy the same; and afterward, at a subsequent term of the court, certain judgment creditors of M., the mort-

Brooke *v.* Morris et al.

gagor, one of whom obtained his judgment before that in favor of B., and the other a short time after, were, on their own motion, made parties defendant to the action:

*Held,* that the judgments of said creditors were liens on the mortgaged premises, whether obtained before or after the judgment in favor of B.; and that said judgment creditors had the right, before final distribution, by answers and cross-petitions, to set up the defense of usury against said note and mortgage, and have the proceeds of the sale of the mortgaged premises, to the extent of such usury, applied to the payment of their liens, notwithstanding the judgment in favor of B.

THIS case comes here upon a reservation of demurrers to certain answers and cross-petitions.

*Teetor & Cole,* for the demurrer.

*Hoadly & Johnson,* contra.

O'CONNOR, J.   On the 11th of November, 1871, the plaintiff, Cornelia S. Brooke, filed her petition in this court against the defendant, A. D. Morris and wife, asking for a judgment on a promissory note for the sum of ten thousand dollars, and for a decree of foreclosure of a mortgage on lands in Corryville, in this county, given to secure the payment of the same.   On April 8, 1872, judgment was rendered for the amount claimed, and interest, amounting in all to $11,843.20, and the sale of the mortgaged premises decreed.   A portion of the mortgaged premises were sold under this decree, and the proceeds distributed; and pending the sale of the balance, Henry Cordes, of his own motion, and the Indianapolis and Cincinnati Elevator Company, of its own motion, claiming to have an interest in the controversy adverse to the plaintiff, asked and obtained leave to be made parties defendant, and to file answers and cross-petitions.

Henry Cordes filed his answer and cross-petition January 10, 1873, in which he alleges, that on the 30th March, 1872 (a short time before the plaintiff obtained her judgment), a judgment in favor of one Collins, and against defendant,

A. D. Morris, as principal, and himself as surety, was rendered in the court of common pleas, of this county, for the sum of $758, and that the same became a lien on the real estate of said Morris; that on the 27th day of June, 1872, he (Cordes) paid said judgment and costs in full, and that he thereby became the owner of said judgment, and entitled to collect the same from said Morris, and to enforce the judgment lien upon the premises described in the petition.   Cordes also alleges that on the 25th day of March, 1872, Joseph McDougal recovered a judgment, in the Superior Court of Cincinnati, against said A. D. Morris, as principal, and against himself, as surety, for the sum of $511.50; and that on the 27th day of June, 1872, he also paid this last judgment and costs in full, and that he (Cordes) thereby became the owner of said judgment, and entitled to collect the same from said defendant, Morris, and to enforce the judgment lien upon the premises described in the petition.

He further says that the note for $10,000, sued upon in the petition, is tainted with usury, and that the judgment rendered on said note for $10,000 and interest should have been only for the sum of $8,655, and interest thereon at the rate of six per cent.   He says he is entitled to have paid to him out of the proceeds of the sale of the mortgaged premises the amount of said two judgments, being the sum of $1,332, and interest from June 27, 1872; and that the amount of the judgment rendered against said Morris, in favor of the plaintiff in this suit, is so large that it will require all the proceeds of the sale of said premises to pay the same; that said Morris has no other property subject to execution, and that unless this defendant, Cordes, has relief in this action, and said judgment reduced by the amount of said usury and interest thereon, he will be without remedy against said Morris.

The answer and cross-petition of the Indianapolis and Cincinnati Elevator Company was filed January 14, 1873, and sets out that at the November term, 1872, the company ob-

tained a judgment against the defendant, Morris, for the sum of $296.88, and that said judgment is a lien upon the premises described in the petition. The other allegations and the prayer are the same as in the answer and cross-petition of Cordes.

To these answers and cross-petitions the plaintiff demurs, and the demurrers are reserved here for decision, the same question arising on each.

Several grounds are stated in support of the demurrers; but as one ground only was relied on in argument, and as it is the only one which we deem essential, it alone will be considered.

It is claimed by the plaintiff "that the cross-petitioners have no right or legal capacity to interpose the defense of usury to the mortgage, or to set up any counter-claim whatever whereby the rights of the plaintiff, under the judgment heretofore rendered, at a previous term of the court, in her favor, can in any manner be impaired or reduced."

In the first place it is claimed by the plaintiff that if the note had been tainted with usury, Morris might have set up the defense, or he might have waived it; that if he ever had such a defense he chose to waive it, and that now, after judgment has been rendered against him, his right is gone beyond recall. This is undoubtedly true as to Morris, and all persons claiming under him, but the cross-petitioners do not claim under him.

In the next place it is claimed that it is a well-established principle that the borrower only (in an ordinary loan), and the mortgagor and his privies (in a loan secured by mortgage), will be permitted to interpose the defense of usury. This proposition is not tenable. In the case of *Mattocks et al.* v. *Humphrey's Adm'r*, 17 Ohio, 339, the court say: "It is urged that the right to be exempted from paying over six per cent. interest is a personal privilege, not to be enforced, except at the request of the party who had contracted to make such payment. But a court of equity can

not, in the proper exercise of its jurisdiction, decree the payment of illegal interest, when the fact is distinctly shown in the evidence." It was a case where, as the court say, "at the instance of a third person, the law brings both these parties (*i. e.*, mortgagor and mortgagee) into court as defendants, without any agency of theirs, and undertakes to determine and dispose of all the equitable interest belonging to one of them." And in the case of *The Union Bank of Massillon* v. *Bell et al.*, 14 Ohio St. 210, the court say: "Not only assignees, but judgment creditors of the mortgagor, having a lien on the lands mortgaged, may set up the defense of usury against the mortgage, and this though the mortgagor suffers a decree to be taken against him *pro confesso*, and cites *Post* v. *Dart*, 8 Paige's Ch. 639. It is evident, therefore, that these cross-petitioners, unless prevented by the judgment against Morris, may set up the defense of usury against his mortgagee, the plaintiff.

It is further urged, on behalf of the plaintiff, that these cross-petitioners are judgment creditors, and that the judgments under which they ask relief were rendered in suits which were begun long subsequent to the *condition broken* of the mortgage, and at a term of court subseqent to that in which plaintiff's suit herein was commenced and the summons returned, personal service having been made. It is therefore argued, first, that as the judgments were obtained after condition broken of the mortgage, that the mortgagor, Morris, had no longer any legal estate in the mortgaged premises upon which the judgment lien could attach; and, in the second place, that as said judgments were obtained at a term of court subsequent to that in which the plaintiff's suit was commenced, that the rule of *lis pendens* applies, and that said judgment creditors, under section 78 of the code, could acquire no interest in the subject matter of the suit as against the plaintiff's title.

As to the first objection, that after condition broken the mortgagor had no legal estate to which a lien could attach,

this is fully answered by the case already cited, *Bank of Massillon* v. *Bell et al.*, 14 Ohio St. 213, where the court say: "Nor can the fact that the condition of the mortgage was broken, and that the estate of the mortgagee had become absolute at law, prior to the making of the deed of trust by the mortgagor (or prior to the obtaining of the judgments in this case), have any significance here; for, in a court of equity, at least until after entry or foreclosure, a mortgage, whether before or after condition broken, is regarded as a mere security for the performance of its condition." And therefore the mortgagor may redeem after judgment and decree against him, at any time before final confirmation and distribution, and until that time he holds the legal estate.

As to the objection of *lis pendens.* The code, section 78, provides: "When the summons has been served, or publication made, the action is pending, so as to charge third persons with notice of its pendency, and while pending, no interest can be *acquired* by third persons in the subject matter thereof, *as against the plaintiff's title.*" It is to be observed that under this section the *interest* must be *acquired*, and must be acquired *as against the plaintiff's title* in the subject matter. Now, a judgment *lien* is not *acquired.* The *judgment* is *acquired*, because it is sought by the creditor and is the result of his own exertions; but the *lien* is created by law, and cast upon the judgment creditor as much as an estate is by descent; and it may be cast upon him against his consent and even against his interest, for his judgment and lien may be instantly subjected to the payment of his debts. But however this may be, the interest acquired must be *against the plaintiff's title.* These judgment creditors claim no interest against the plaintiff's title—they claim only what is left of the subject matter after his claim is fully satisfied according to law; but they do claim that he has no title to usurious interest in the subject matter, to their prejudice. In other words, they claim that as to him

they are merely junior lienholders.    The doctrine of *lis pendens*, then, does not affect their rights.

It is next claimed that these judgment creditors were made parties, on their own motion, at a term of court subsequent to that at which the plaintiff's judgment and decree for foreclosure were granted, and that as no exception was taken at the time to the findings of the court, and no motion filed during the same term for a new trial, or for a modification of the judgment or decree, and as they do not claim that there was either fraud or irregularity in obtaining the judgment, they are now absolutely bound by it, and can not be permitted to deny that the plaintiff was entitled to the full amount of her judgment.    And this presents, as we think, the only serious or difficult question in the case.

The plaintiff's argument is based upon the doctrine of *res judicata*—that the judgment in favor of the plaintiff is conclusive as to all the world, since all persons who had any interest in the subject matter of the suit, at the time of its commencement, were made parties thereto.    To this it may be answered that the amount found due by the judgment is unquestionably *res judicata* as to the defendant, Morris, and all persons claiming under or through him. Neither he nor they can question it.    But if the doctrine of *res judicata* has any application whatever to the position now occupied by these judgment creditors, and of that we shall speak presently, it may be said that they do not claim under or through Morris; in fact, they claim adversely to him as well as to the plaintiff.    Their lien is derived from a different source from that of the plaintiff, in so far as the plaintiff claims under the mortgage, and is valid, though junior to it; and in so far as the plaintiff may claim a lien on the land of the judgment debtor, by virtue of the judgment, the liens of Cordes are superior, for the judgments to which he succeeded were first obtained.    As to the land of Morris, however, or as to the fund in court, which represents the land, these judgment creditors and the plaintiff

are mere lienholders according to precedence, and no one of them is entitled to more than his equitable interest; and it makes no difference that the interest which each one claims is embodied in a judgment; for, as there is no privity between them, and as no one of them was a party to the judgment obtained by the other, and therefore had no opportunity to defend against it, it follows that in a court of equity, where the object is to enforce the liens upon land, or a fund in court, which is not sufficient to satisfy the demands of all, any one of them may, by a proper proceeding (and we think the answer and cross-petition in this case a proper proceeding for the purpose), impeach the judgment, by showing that usury entered into it.   And so, in this case, the plaintiff might impeach the judgments of Cordes and the elevator company for usury, by a direct proceeding for that purpose.   But does the question of *res judicata* necessarily arise in this case, as between the judgment creditors and the plaintiff?   It seems to us the question before us is not whether the plaintiff's judgment should be modified or abated, but how much of the fund now in court should equitably be applied toward its satisfaction, leaving the balance, and the judgment itself, in full force as between the original parties.   It is true the judgment creditors ask that the judgment be reduced by the amount of the usury, but this request does not go to the merits of their cross-petition.   Their interest is in the fund, not in the plaintiff's judgment; and as the fund is still in court, undistributed, and as the judgment creditors are properly before the court, we think the court has jurisdiction to distribute the fund according to the equities of the parties.

The plaintiff is not claiming the satisfaction of his judgment by force of a judgment lien, for if he was, the judgment liens of Cordes, being the elder, would have the preference; but he is seeking satisfaction by the decree of the court under his mortgage lien, and seeking equity he must do equity.   We think, therefore, that the question of *res judicata* does not necessarily arise in the case.

The conclusion to which we have come is fully sustained by the case of *The Union Bank of Massillon* v. *Bell et al.*, 14 Ohio St. 200, before cited, and which in many of its features is like this. The action in the Court of Common Pleas was brought by the bank against Bell and others, on certain drafts drawn by Bell, and on a mortgage of real estate given by him to secure the payment of the drafts. Prior and subsequent mortgagees, and Raffensberger and Graves, to whom Bell, two days after the recording of the mortgage to the bank, gave a deed in trust of the premises for the benefit of his creditors, were made parties. The petition was for a money judgment and the sale of the mortgaged premises. An order of sale was made and a portion of the premises sold, and the money brought into court. A jury trial was then had, upon what issue is not stated in the report, the answer of Bell having disappeared from the files, and the jury found for Bell. The bank appealed to the District Court, wherein, at the May term, 1858, Fenner, McMillan, and Arthur, and other creditors of Bell were made parties defendant, and leave was given them to answer in 120 days. But at the same term of the court Bell confessed judgment in favor of the plaintiffs for $10.500, and the court entered judgment for that sum; and the court further ordered that, as between the plaintiff and Bell, the purchase money arising from the sale of the mortgaged premises should be applied in discharge of said sum, and ordered that the rest of the real estate be sold to make the amount of the judgment. And then the entry contains the following order: " And this cause as to all other matters and things in controversy as between the several defendants, *except said Bell and the plaintiff*, be and shall remain open for the further order and judgment of the court. And it is ordered that the purchase money aforesaid shall remain in the hands of the officer until further order of the court; and all other defendants, except said Bell, have full leave to contest the validity of the claim and aforesaid judgment of said plaintiff against said Bell, and the right

of said plaintiff to any of said purchase money by reason thereof; and this cause is kept open for all such judgments, orders, and decrees, in reference to same as justice may require."

It is to be remarked of this entry, that it shows a judgment against Bell, absolute on its face as against him, in regular form of words. And not only that, but although the other defendants are expressly given the right to contest its validity, yet, in express words, he (Bell) is excepted from that right. This entry was made in the District Court, and would seem to have been made by the consent of parties without being directed by the court, for we can hardly suppose that the court would render a regular, valid judgment as between the parties, and afterward prescribe what should be the result and consequences or operation of such judgment. The operation and consequences of a valid judgment flow from the law and not from the court, and, therefore, the entry, in giving the other defendants, except Bell, the right to contest the validity of the confessed judgment, does no more than declare what the law is. And so the Supreme Court seemed to regard it, for it says, in reference to this entry: "That these creditors of Bell are not precluded from making the defense of usury by force of the decree previously taken by consent of Bell against him; *because, if his consent to a decree against him could, under any circumstances,* have such an effect, their rights are expressly saved by the terms of decree."

In November, 1860, more than two years after the date of said entry, Fenner, McMillan & Arthur, and other defendants, judgment creditors of said Bell, filed an amended answer, setting out their respective judgments, that they had levied on the real estate described in the petition, and that the judgments remained unpaid, and that the drafts mentioned in the petition were void for usury; and they pray that the plaintiff may not recover anything upon the mortgage lien by virtue of said judgment, etc. To this answer the plaintiff filed a demurrer, the sixth cause

assigned being, that the defendants had no right or legal capacity to interpose the defense of usury against the mortgage. And the court held, "that judgment creditors of the mortgagor, having a lien on the land mortgaged, may set up the defense of usury against the mortgage, and this, though the mortgagor suffers a decree to be taken against him *pro confesso.*" And cite *Post* v. *Dart*, 8 Paige's Ch. 639. It is true that in the above case the defendants, who set up the usury, were parties defendant before the judgment was entered against Bell, but their rights could not be enlarged by that circumstance ; on the contrary, being in the case, they may have had an opportunity to resist the judgment, and yet they did not set up the usury until more than two years thereafter.

For the reasons given, a majority of the court hold that the demurrers must be overruled.